[No. 8342.]

## M. E. SMITH & COMPANY V. QUINN.

1. STATUTES—*Construction.* In construing a statute the court is controlled by the words thereof. With the wisdom, policy, or justice of the enactment, the court has no concern. (283.)

The history of the enactment is a matter proper for consideration, in seeking its intent. (283.)

2. EXECUTORS AND ADMINISTRATORS—*Orphan's Allowance.* Sec. 7223 of the Revised Statutes has not the effect to authorize an allowance to the minor orphan of a deceased mother. (284, 285.)

*Error to Denver County Court.* Hon. IRA C. ROTHGERBER, Judge.

Messrs. DANA & BLOUNT, for plaintiffs in error.

Mr. PERCY S. MORRIS, for defendant in error.

HILL, J., delivered the opinion of the court.

On September the 4th, 1913, John Mignolet was appointed administrator of the estate of Minnie Boyer, deceased. Her property consisted of a stock of merchandise estimated to be worth $3,200; her heirs at law were E. O. Boyer, her husband, and Ella Quinn, a daughter by a former marriage. The plaintiffs in error are creditors of the deceased whose claims were duly allowed as of the fifth class. Upon petition of the daughter (then fifteen years of age) by E. O. Boyer as her next friend, an orphan's allowance of $2,000, to be paid in cash to be derived from the assets of the estate, was granted to the daughter. The administrator, as well as the plaintiffs in error, duly objected and excepted to this allowance. The latter bring the case here for review.

By an agreed statement of facts, it is admitted, that the estate is insolvent, and if the allowance to Ella Quinn is sustained there will be nothing left to pay the fifth class claims which include those of the plaintiffs in error; that since the death of Minnie Boyer, her daughter, Ella Quinn, has been supported and provided for continuously by her stepfather, the surviving widower of the deceased; that her father is dead. The defendant in error claims that section 7223, Revised Statutes of 1908, is authority for this allowance. It reads:

"7223. Widow and orphan's allowance.—Sec. 184. If any decedent leaves a widow residing in this state, in all cases she shall be allowed to have and retain as her sole and separate property, one bed and bedding, wearing apparel of herself and family, one cow and calf, one saddle and bridle, one horse, household furniture for herself and family, and also the same amount and species of property as is or may be by law exempt from execution, not to exceed in any event the sum of two thousand dollars in value. If there be no widow, but an orphan minor child, or children,

such child or children shall be entitled to the same rights of allowance as a widow, to be allowed in the same manner and paid to a guardian for such child or children."

The contention is that the word "decedent" as therein used applies to the wife the same as to the husband, and that the section applies to the disposition of her estate the same as to the husband's. The plaintiffs in error contend, that the provisions of this section apply only to the estate of the husband; that the word "decedent" as therein used can have no other meaning without doing violence to the remainder of the language in the section; also, that the context can impart no other meaning. In other words, that the words "any deceased" as used in this section can mean nothing else than a deceased man, and that the word "widow" as therein used cannot, within reason, be construed to mean surviving husband or widower.

The question to determine is, what was intended by the language used; with the wisdom, policy or justness of the law or what should have been done, this court has nothing to do. *Nisbet v. Sigel Campion Co.*, 53 Colo. 333. In order to arrive at the intention of the legislature, it is proper to look into the history of the act out of which this contention grows. It appears to have been first passed in 1861 and reads the same as the present act to and including the word "execution;" then follows "Said property shall be retained by the widow and set apart to her by the executor or administrator and shall in no case be subject to the payment of debts of the deceased." This section remained in this condition until 1903 when our laws concerning estates, wills, etc., were revised and re-enacted and the former ones repealed, at which time the portion of this section last referred to was omitted therefrom and the words "not to exceed in any event the sum of two thousand dollars in value. If there be no widow, but an orphan minor child or children, such child or children shall be entitled to the same rights of allowance as a widow, to be allowed in the same

manner and paid to a guardian for such child or children"
were added. It will thus be seen that under the earlier act,
provision was made solely for the surviving widow. It fol-
lows that the extent to which it now applies to children must
be found under the provisions of the 1903 act, upon a care-
ful examination of which we are unable to give it the con-
struction claimed by the defendant in error. The language
"If any decedent leaves a widow residing in this state, in all
cases she shall be allowed to have and retain as her sole
and separate property" can refer to no other decedent than
a man; to hold otherwise would be doing violence to the
language used. Had the legislature of 1903 intended to
change this law in this respect from what it said prior
thereto by extending its provisions to the estate of a de-
ceased woman, we think it would, in some manner, have in-
dicated this intention by a change in the language; not hav-
ing done so, we must conclude that they intended it to remain
as theretofore and to apply to estate of deceased husbands
only. This position is strengthened by the fact that in case
the wife is living no provision is made for the children. It
is only in event of her death prior to the husband's that they
are to have an allowance, hence, if the word "decedent" as
used in this section applies to the wife, and for this reason
a children's allowance is provided therefor, in case of the
death of the husband, then the word "widow" following
must, of necessity, apply equally as well to the husband. It
is agreed that the deceased had a husband, although a second
one, living, at the time of her death, but we do not think
it was intended to transpose the meaning of either of these
words. In addition to the context and the words themselves
as therein used, there are many reasons which sustain this
conclusion. Speaking generally, the husband is the head of
the family, and while there are exceptions to the rule, the
business from which the family derives a livelihood is usually
conducted in his name, and the liabilities therefor are stand-
ing against him. Such being the case, and he usually being

the principal breadwinner for the household, it was evidently thought advisable to make some arrangements out of his estate for his children in case of his death, where his wife's death preceded his. Were she living, she, of course, would be entitled to this allowance; but such is not always the case when applied to the wife's estate, which, most of the time is a separate identity, and which usually has no such liabilities existing against it, and in case of her departure quite often the breadwinner of the family, the husband, is left with the children, and, far more often, is much more able to battle with the world upon their behalf than the mother who has passed away. 'Tis true, there may arise cases like the one under consideration, where the father of the child has gone before, and quite likely in such cases there ought to be arrangements made for the care of the child out of the estate of the mother, in preference to having it all consumed by her obligations; there likewise probably ought to be arrangements made for the child, in case the wife is a stepmother, regardless of which fact the allowance, as the law now exists, all goes to her; but had the legislature had these matters in mind and thus intended, we are of opinion that it would have thus stated in some appropriate language. A similar conclusion was reached in *Thaxton's Guardian et al. v. Walters*, Admr., 130 Ky. 235, 113 S. W. 118, where the substance of the statute was similar to the one under consideration. The same rule was adopted where similar principles were involved in *Davenport v. Brooks*, 92 Ala. 627, 9 So. 153; *Daniel v. Phelps*, 86 Ga. 363, 12 S. E. 584; *Chapman v. McGrath*, 163 Mo. 292, 63 S. W. 832.

In the absence of language which will reasonably warrant it, we would not be justified in resorting to such a strained construction as contended for, though personal sympathy always appeals to us in such cases in our desire to aid minor children.

For the reasons stated the judgment is reversed and

the cause remanded for further proceedings in harmony with·the views herein expressed.

*Reversed and remanded.*

Decision *en banc.*

SCOTT, J., dissents.